**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

---

**UNITED STATES OF AMERICA**
        **Plaintiff,**

   v.                                                      **Case No. 11-CR-2**

**TYRUS LOVE**
        **Defendant.**

---

## SENTENCING MEMORANDUM

Defendant Tyrus Love pleaded guilty to being an accessory after the fact, 18 U.S.C. § 3, to an armed robbery committed by his half-brother, Damone Key. I ordered a pre-sentence report ("PSR") and set the case for sentencing. In imposing sentence, the district court must first calculate the defendant's advisory sentencing guideline range, then determine the ultimate sentence under all of the factors set forth in 18 U.S.C. § 3553(a). See United States v. Panice, 598 F.3d 426, 441 (7th Cir. 2010). This memorandum sets forth my determinations.

### I. GUIDELINES

Defendant's PSR set a base offense level of 21 under U.S.S.G. § 2X3.1(a)(1), subtracting 6 levels from the offense level for the underlying crime. The underlying robbery carried a base offense level of 20, U.S.S.G. § 2B3.1(a), plus 7 levels because Key discharged a firearm during the crime, § 2B3.1(b)(2)(A). The PSR then deducted 3 levels for acceptance of responsibility, § 3E1.1, for a final level of 18. Coupled with defendant's criminal history category of II, level 18 produced an imprisonment range of 30-37 months. Neither side objected to these calculations, which I adopted.

## II.  SECTION 3553(a)

**A.    Sentencing Factors**

Section 3553(a) directs the court, in determining the particular sentence to be imposed, to consider:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct;  (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the [advisory] sentencing [guideline] range[;]

(5) any pertinent policy statement . . . issued by the Sentencing Commission[;]

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

After considering these factors, the court must comply with the statute's "overarching command" to impose a sentence that is sufficient, but not greater than necessary, to comply with the purposes of sentencing set forth in § 3553(a)(2).  Kimbrough v. United States, 552 U.S. 85, 101 (2007).  While the guidelines serve as the starting point and initial benchmark in making this determination, Gall v. United States, 552 U.S. 38, 49 (2007), the district court may not presume that a guideline sentence is the correct one, Nelson v. United States, 129 S. Ct. 890, 892 (2009).  Rather, after accurately calculating the advisory range so that it can derive

whatever insight the guidelines have to offer, the district court must make an independent determination based on all of the § 3553(a) factors and "without any thumb on the scale favoring a guideline sentence." United States v. Sachsenmaier, 491 F.3d 680, 685 (7th Cir. 2007).

**B.     Analysis**

    **1.     The Offense**

On December 4, 2010, Key asked defendant to drive him to a Milwaukee bar. Unbeknownst to defendant, Key planned to rob the establishment. While defendant waited in the car, Key entered armed with a revolver, fired a shot into the ceiling, and demanded money from the bar and its patrons. After collecting money, jewelry, and other items, he exited and returned to the car. Key then told defendant he just did a "lick," i.e. a robbery, and told defendant to drive him from Milwaukee to Hartland, Wisconsin, where Key returned the vehicle to his girlfriend. Defendant then drove Key away in another vehicle, which was eventually stopped by law enforcement.

    **2.     The Defendant**

Defendant presented as a young man, just twenty-one years old, somewhat immature, but generally endeavoring to do the right thing. His accomplishments appeared more meaningful given his upbringing.

Defendant never met father. When he was eight years old, his mother began dating a man, Michael Harris, who physically abused defendant and his siblings on a daily basis. His sister eventually told school authorities about the abuse, and the children were taken from the home. From the ages of nine to fourteen, defendant resided in a series of foster homes, then

3

he returned to his mother's home. His mother had completed parenting classes, but Harris was still there and still abusive. At age seventeen, defendant was informally adopted by a teacher at his school, Adrian Wade, who became his father figure.

Defendant had some brushes with the law – marijuana possession in 2007 and 2008, disorderly conduct in 2008, and criminal damage to property in 2010 – but nothing nearly so serious as the instant offense. Despite defendant's arrest and indictment, Mr. Wade remained supportive, indicating that defendant had done well since his release on bond in this case, stopping marijuana use, attending to his child, and complying with his conditions of release. Defendant earned his high school diploma in April 2011.

Defendant had a one year old child with his girlfriend and also acted as a father figure to her child from a previous relationship. She described defendant as someone with a lot of potential and a good work ethic. Defendant lived with her and their children, and he seemed to take his responsibilities as a father seriously. He compiled a solid work record, as set forth in ¶¶ 60-64 of the PSR, and the court received numerous positive letters, including from an employer, who noted his kind and generous nature, as well as his immaturity, but like Wade she saw potential. Her house-mate likewise spoke of defendant's respectful and kind nature. Defendant's uncle wrote that defendant could be bitter, given his upbringing, but instead tried to seek out the good in a situation. His mother and sister remained supportive as well.

**3. The Sentence**

The guidelines call for a term of 30-37 months, but I found a sentence below that range sufficient. First, while the underlying offense was obviously very serious, defendant was unaware of Key's plan to rob the bar until after it happened. The record contained no indication that his role was premeditated; rather, faced with his older brother having just committed a

4

robbery and telling him to drive, defendant, just twenty-one, made the stupid decision to comply. He obviously regretted his actions very much, as he explained in a letter to the court.

Given these circumstances, I found that the guideline range overstated defendant's culpability. As indicated above, U.S.S.G. § 2X3.1 sets the base level for accessory after the fact 6 levels lower than the level applicable to the underlying offense. As I discussed in United States v. Hughes, 739 F. Supp. 2d 1151, 1154 (E.D. Wis. 2010), the 2X guidelines (applicable to attempts, accessory after the fact, and misprision of a felony) are rather blunt tools. Setting the level 6 levels lower than that applicable to the underlying felony might appropriately capture the culpability of an accessory after the fact, or it might not; it depends on what the defendant actually did and on how aggravated the underling conduct was. Here, the underlying conduct was serious, but defendant's role in the offense was far more limited than the 6 level reduction reflected. He knew nothing of Key's plan beforehand, and he received no profit at any time. Further, police apprehended Key fairly quickly, so defendant did not even help him evade capture for all that long.

Second, defendant's prior record was minimal. The instant offense represented his first felony, and he had never served more than 9 days in jail before. Generally, a lesser sentence will suffice to deter a defendant not previously subject to lengthy incarceration than is necessary to deter a defendant who has already served serious time yet continues to re-offend. See United States v. Qualls, 373 F. Supp. 2d 873, 877 (E.D. Wis. 2005). Defendant complied with pre-trial release, which suggested that he was a good candidate for supervision. He did not appear to be violent or predatory, and I found that he did not pose a danger to the community, if properly supervised.

Third, I found it appropriate to acknowledge that, despite his bad upbringing, defendant

5

nevertheless did pretty well, forming a positive relationship with Mr. Wade, demonstrating a good work ethic, and attempting to care for his child. He and his girlfriend and their children had recently moved into a home he helped rehabilitate.

This was the type of progress I did not want to unnecessarily disturb. Given the seriousness of the underlying offense, some form of confinement was needed to provide just punishment and deter others. Therefore, I imposed a sentence of probation but required as a condition that defendant serve a period of home confinement. This provided a sufficient measure of punishment, given the nature of defendant's conduct, and sufficed to deter others. It also provided needed structure and additional monitoring.

### III. CONCLUSION

Therefore, I placed defendant on probation for 3 years. I found this term sufficient to ensure monitoring and legitimate employment. As conditions, I required defendant to make restitution to the bar, joint and several Key; participate in a program of testing and residential or outpatient treatment for drug and alcohol abuse; and comply with the conditions of home confinement for a period not to exceed 180 consecutive days. Other terms and conditions of the sentence appear in the judgment.

Dated at Milwaukee, Wisconsin, this 15th day of July, 2011.

/s Lynn Adelman

_____
LYNN ADELMAN
District Judge

6